IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

STEVEN BURKE,

      Petitioner,

v.                                Case No. 5:20cv241-RV/MAF

RICKY D. DIXON, Secretary,
Florida Department of Corrections,[1]

      Respondent.

_____/

## REPORT AND RECOMMENDATION

On or about August 24, 2020, Petitioner Steven Burke, a state inmate proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. On March 24, 2021, Respondent filed an answer, with exhibits. ECF No. 14. Petitioner has filed a reply. ECF No. 20.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B). After careful consideration, the undersigned has determined no evidentiary hearing is required for the disposition of this matter. *See* Rule 8(a), R. Gov. § 2254 Cases. For the reasons stated herein, the pleadings and attachments before the Court show

---

[1] The Clerk of Court shall substitute Ricky D. Dixon as Secretary of the Florida Department of Corrections. Ricky D. Dixon succeeded Mark S. Inch as Secretary for the Department of Corrections and is automatically substituted as Respondent pursuant to Federal Rule of Civil Procedure 25(d).

Petitioner is not entitled to federal habeas relief, and this § 2254 petition should be denied.

## **Procedural Background**

By information filed April 13, 2015, in Gulf County Circuit Court case number 2015-CF-00093A, the State of Florida charged Petitioner Steven Burke with manslaughter with a firearm, in violation of sections 775.087 and 782.07, Florida Statutes, in connection with events that occurred on or about March 18, 2015, resulting in the death of Michael E. Burke, Petitioner's brother.  Ex. 2.[2]  Petitioner Burke proceeded to a jury trial in November 2015. Exs. 1, 3.  He did not testify.  Ex. 13 at 300-01.  On November 13, 2015, the jury found him guilty as charged.  Ex. 3.  On January 7, 2016, the judge sentenced him to fifteen (15) years in prison, with credit for 185 days.  Ex. 3.

Burke appealed his judgment and sentence to the First District Court of Appeal (DCA), assigned case number 1D16-307, and his court-appointed counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), asserting no issue of arguable merit existed.  *See* Ex. 10.  On October 19, 2016, the First DCA per curiam affirmed the case without a written opinion.

---

[2]Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits submitted with Respondent's answer, ECF No. 14.
Case No. 5:20cv241-RV/MAF

Ex. 16; <u>Burke v. State</u>, 202 So. 3d 408 (Fla. 1st DCA 2016) (table).   The

mandate issued November 15, 2016.  Ex. 16.

On January 6, 2017, Burke filed a Motion for Reduction of Sentence

pursuant to Florida Rule of Criminal Procedure 3.800(c).   Ex. 4.   Burke

asserted his sentence was improperly enhanced due to the victim's disability

when the victim was not actually disabled.  *Id*.  By order rendered January

20, 2017, the state trial court denied the motion, finding Burke's "offense was

properly enhanced from a second degree felony to a first degree felony

based on the discharge of a firearm, not on any disability of the victim."  Ex.

5.  Burke did not appeal this order.  *See* ECF No. 14 at 3.

On November 14, 2017, Burke filed a pro se motion for postconviction

relief pursuant to Florida Rule of Criminal Procedure 3.850.  Ex. 6.   On

February 12, 2018, Burke filed a Notice of Voluntary Dismissal of this Rule

3.850 motion.  Ex. 7.

On April 14, 2018, through counsel, Burke filed another Rule 3.850

motion.  Ex. 8.  An evidentiary hearing took place on November 20, 2018,

during which Burke was represented by counsel.  Ex. 9; Ex. 19 at 650.  By

order rendered January 4, 2019, the state post-conviction court denied relief.

Ex. 9.  Burke appealed to the First DCA, assigned case number 1D19-214, and the assistant public defender filed a brief on his behalf.  Ex. 20.  The State filed an answer brief, Ex. 21, and Burke filed a reply, Ex. 22.  On May 11, 2020, the First DCA per curiam affirmed the case without a written opinion.  Ex. 23; Burke v. State, 294 So. 3d 864 (Fla. 1st DCA 2020) (table). The mandate issued on June 1, 2020.  Ex. 23.

On June 4, 2020, Burke filed a motion to correct an illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a).  Ex. 25.  By order rendered July 28, 2020, the state trial court denied the motion.  Ex. 26.  Burke appealed to the First DCA, assigned case number 1D20-2461.  Exs. 27, 28. On January 27, 2021, the First DCA per curiam affirmed the case, without a written opinion.  Burke v. State, 310 So. 3d 393 (Fla. 1st DCA 2021); Ex. 28. The mandate issued February 22, 2021.  Ex. 28.

In the meantime, as indicated above, Burke filed a § 2254 petition in this Court on August 24, 2020.  ECF No. 1.  He raises two grounds, both alleging ineffective assistance of counsel (IAC):

(1)  **IAC – Trial Counsel**:  Counsel provided ineffective assistance by advising Petitioner not to testify.  ECF No. 1 at 9-10.  Burke asserts this advice left him "without a defense at trial."  *Id*. at 10.

(2) **IAC – Trial Counsel**:    Counsel provided ineffective assistance by not filing "a pre-trial motion for immunity under the Florida Stand Your Ground Law." *Id*. at 17-18.

Respondent filed an answer, with exhibits.  ECF No. 14.  Burke has filed a reply.  ECF No. 20.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody.  Section 2254(d) provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See, e.g.,* Cullen v. Pinholster, 563 U.S. 170, 180-83 (2011); Gill v. Mecusker, 633 F.3d 1272, 1287-88 (11th Cir. 2011).  "This is

a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" Cullen, 563 U.S. at 181 (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011), and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)). This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Id*.

For IAC claims, the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984). To demonstrate ineffectiveness, a "defendant must show that counsel's performance fell below an objective standard of reasonableness." *Id.* at 688. To demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability

sufficient to undermine confidence in the outcome." *Id.* For this Court's purposes, importantly, "[t]he question 'is not whether a federal court believes the state court's determination' under the <u>Strickland</u> standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'" <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quoting <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473 (2007)). "And, because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.* It is a "doubly deferential judicial review that applies to a <u>Strickland</u> claim evaluated under the § 2254(d)(1) standard." *Id.*

The <u>Strickland</u> test applies to IAC claims arising out of the plea process. <u>Hill v. Lockhart</u>, 474 U.S. 52, 57-58 (1985). When a defendant has entered a plea while represented by counsel, as here, "the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id*. at 56 (quoting <u>McMann v. Richardson</u>, 397 U.S. 759, 771 (1970)). "[A] defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in <u>McMann</u>.'" *Id*. at 56-57 (quoting <u>Tollett v. Henderson</u>, 411 U.S. 258 (1973)). That a plea is one

of nolo contendere, as here, rather than guilty, does not warrant a different analysis for purposes of federal habeas corpus.   *See* North Carolina v. Alford, 400 U.S. 25, 35-37 (1970); *see also* Florida v. Royer, 460 U.S. 491, 495 n. 5 (1983) (explaining that "[u]nder Florida law, a plea of nolo contendere is equivalent to a plea of guilty").

## **Ground 1:  IAC – Testifying at Trial**

In his first ground, Petitioner Burke asserts defense counsel provided ineffective assistance by advising him not to testify at his trial.  ECF No. 1 at 9-10.  He asserts this advice left him "without a defense at trial."  *Id*. at 10.  Burke exhausted this ground by raising it as the first claim in his Rule 3.850 motion.  Ex. 8 at 5-23.

After an evidentiary hearing, the state post-conviction trial court denied the claim.  Ex. 9.  In particular, as Respondent indicates, the court made the following findings regarding the history of the case, trial witnesses' testimony, defense counsel's arguments, and the jury's verdict:

> 5.  Defendant shot and killed his brother, Mike Burke, after a long day of drinking and confrontation.  They were both staying at their late mother's home while they were working together on a construction job.  Earlier in the day at issue, Mike Burke hit Defendant and gave him a black eye.  Defendant, later, tried to bring food to his brother as a peace offering, but Mike Burke rejected Defendant and told him to leave.  Defendant then went to see a friend, David Hendry.  The Defendant made statements to David Hendry that were threatening towards Mike Burke in nature, including that he may "burn some gun powder on his

brother." Later that night, witnesses heard two shots fired and saw Defendant's vehicle leaving the scene. Mike Burke was found unconscious and died two days later. Defendant was arrested and charged with manslaughter with a firearm.

6. A key witness for the State at trial was Vickie Langford, a sister of both brothers. According to Vickie Langford, Mike Burke was staying in a trailer that belonged to their late mother. Defendant was also staying at the trailer on a temporary basis while he and Mike Burke were working on a job together. The brothers often drank a lot of alcohol and argued with each other. They were distrustful of each other, and Defendant thought Mike Burke wanted to kill him. Both brothers came by her house after work on the afternoon at issue. Mike Burke told her there had been a fight, and she saw Defendant's black eye and also noticed that Defendant had been drinking. Defendant came onto the trailer porch, bringing food to Mike Burke as a peace offering, but Mike Burke did not want anything to do with Defendant and told him to go away. Defendant drove away from Vickie Langford's house but returned shortly and told Vickie Langford there would be rent due on their late mother's trailer from then on. Later that evening, Mike Burke and Vickie Langford went over to their mother's trailer, and Mike Burke drank some beer. When Defendant drove up, Mike Burke put a shotgun inside the door of the trailer. Defendant came in with food to cook and then said he was going to take a shower. Vickie Langford moved the gun to her late mother's bedroom, but Mike Burke moved it back to the porch. Mike Burke then walked Vickie Langford to her house. They stopped by Defendant's car and found a loaded gun inside the passenger door. After checking the gun and determining it was loaded, Mike Burke returned the loaded gun to where it was in Defendant's car. Defendant's car remained where it was parked. Sometime later, Vickie Langford heard two gunshots and she went back to her mother's trailer. She then found Mike Burke wounded on the ground and saw Defendant driving his car away.

7. David Hendry was another important witness for the State at trial. David Hendry testified that he had been Defendant's friend for several years, and Defendant came by his

house on the afternoon in question to talk because he was upset about the fight with his brother and his brother's rejection of his attempt to bring food as a peace offering. Defendant told David Hendry that after Mike Burke hit him in the eye, it was the last time that was going to happen or Defendant would burn Mike Burke with gun powder. David Hendry told Defendant to stay away from Mike Burke, as he testified that he had previously advised Defendant of the same on prior occasions. David Hendry testified that he knew about previous altercations between the brothers, and had seen bullet holes left when Mike Burke shot in the hood of Defendant's truck on a prior occasion. Defendant drank a couple beers while he was at David Hendry's house. Defendant was still upset when he left, but David Hendry testified that [he] did not believe Defendant was going to shoot his brother that night.

8.    There was no eyewitness testimony regarding the shooting incident itself. Neighbors David Broxson and Dennis Emanuel could only say they heard two shots and then they went over and saw Mike Burke lying on the ground. Dennis Emanuel also testified about an incident when Mike Burke shot up the hood of Defendant's truck, which appeared to be the same incident as discussed by David Hendry.

9.    Important for the Defendant, forensic and medical witnesses established that Mike Burke, and not the Defendant, fired the first shot and evidence indicated that Mike Burke was wielding a gun at the time of the fatal shooting. Evidence also indicated that Mike Burke was intoxicated at the time of the shooting.

10.    The jury heard the statement Defendant gave to Investigator Greenwood after he returned to the scene of the shooting on the night at issue. The Defendant denied any involvement in the shooting in his initial conversation with Investigator Greenwood and kept asking what happened to his brother. Defendant told Investigator Greenwood that the blood on him was from injuries at the work site. The Defendant also instructed Investigator Greenwood that Mike Burke had been in prison four times and loved to drink and shoot firearms, and

claimed that Mike Burke did not get along with two of his neighbors.

11.   After the State rested, defense counsel Brian Hill moved for acquittal on grounds the State did not prove beyond a reasonable doubt that the Defendant intentionally killed Mike Burke, or refute that this was a case of self-defense.  The Court denied the motion.

12.  Mr. Hill, as part of the Defendant's case-in-chief, called the fourth sibling, Debra McLeod, in his presentation of the defense.   Debra McLeod testified that Mike Burke was an alcoholic who was violent and dangerous when he was intoxicated, and that Mike Burke had threatened to kill Defendant many times, although the last threat was around three years before the shooting occurred.   Debra McLeod indicated that Defendant believed Mike Burke wanted to kill him, but Mike Burke also thought Defendant might hurt or kill him.  Mr. Hill did not call his client, the Defendant, to testify.

13.  In closing argument, Mr. Hill emphasized to the jury that Defendant should be acquitted based on reasonable doubt and self-defense.  Mr. Hill reminded the jury there was no eye witness testimony regarding what happened right before, or during, the shooting.  Mr. Hill argued that the evidence showed that Mike Burke possessed a gun at the time of the shooting and that Mike Burke fired his gun first.  Thus, Mr. Hill argued that the Defendant was justified in using deadly force to defend himself. Mr. Hill argued there was no evidence that Defendant intended to kill Mike Burke and that Defendant had a right to be at the trailer because he was staying there.  Mr. Hill noted for the jury the testimony regarding Mike Burke being dangerous when he was drinking, and reminded the jury that Mike Burke was intoxicated at the time of the shooting.

14.   Ultimately, the jury found Defendant guilty of manslaughter with a firearm as charged, and he was sentenced to 15 years in prison.

Ex. 9.

The post-conviction trial court also made findings regarding testimony

by Burke and his trial counsel at the evidentiary hearing:

16.  The Defendant testified at the Hearing that he informed Mr. Hill of his version of what happened on the night in question. The Defendant claimed that on the night in question he drove up to the house and saw that Mike Burke had a gun, he armed himself with his own gun and walked towards the porch.  The Defendant claimed that Mike Burke said he was going to kill Defendant and aimed his gun at Defendant.  Defendant testified that he pushed the gun that Mike Burke was holding away from the Defendant's face and the gun discharged by the Defendant's ear.  The Defendant claims that when Mike Burke again aimed his gun at Defendant, Defendant fired his gun at Mike Burke and Mike Burke fell to the ground.  Defendant claimed that he got in his car and drove to David Hendry's house.  Defendant claimed that Mike Burke had threatened to kill him and put a gun in his face many times and did that to other people as well.  The Defendant claimed that Mike Burke had been to prison on weapons charges and that he was scared of Mike Burke on the night at issue.  Defendant claimed at the Hearing that he shot Mike Burke in self-defense.

17.  Brian Hill testified at the Hearing that after he was appointed to the case, he obtained the State's evidence, which included Vickie Langford's version of what occurred on the night in question.  Mr. Hill also stated that he received evidence from the State in which the Defendant gave different versions of what happened on the night in question to law enforcement. Defendant admitted at the Hearing that his initial statement to law enforcement was a lie and also admitted that he changed his statement to law enforcement as the investigation progressed.

18.  Mr. Hill testified that during the months after he was appointed that he met with Defendant on several occasions and discussed the evidence against him.  Mr. Hill testified that such meetings included issues such as the Defendant's proclaimed self-defense, and the State's countervailing claim that the Defendant should have left and not approached Mike Burke after

realizing Mike Burke had a shotgun. Mr. Hill testified that he instructed Defendant that the jury would likely believe that a reasonably cautious and prudent person would have used deadly force in the situation that Defendant claimed he found himself in. Mr. Hill claimed that he advised Defendant that his initial statement, in which he denied any involvement in the shooting, would likely be admissible into evidence, and the jury would likely hear that he was intoxicated at the time of the statement.

19. Mr. Hill testified at the Hearing that he believed that the best trial strategy would be to rely on the physical evidence presented via third parties that Mike Burke had a gun and was the first person to fire a shot on the night in question. Mr. Hill believed that such evidence, combined with testimony from witnesses regarding Mike Burke's violent nature and Defendant's fear of Mike Burke, would be enough to obtain an acquittal without having the Defendant testify. Moreover, Mr. Hill was very concerned with providing the State with the opportunity to cross-examine Defendant due to Defendant's prior inconsistent statements. Mr. Hill testified that ultimately he determined that the Defendant's best chance of acquittal was not testifying at the trial.

20. Mr. Hill testified that he discussed Defendant's right to testify during his pretrial meetings with him. Mr. Hill claimed that he told defendant he would give Defendant his advice, but it would ultimately be Defendant's decision whether to testify at the trial. The trial transcript reflects that before the defense rested, Mr. Hill conducted an inquiry of Defendant regarding his right to testify and his decision not to. Defendant stated under oath that they had discussed his right to testify several times, that he had sat through a day and a half of testimony, and that Mr. Hill had given his opinion but it was Defendant's right to decide. Defendant stated at trial that he believed it was in his best interest not to testify based on discussions with his counsel and his counsel's advice.

21. At the Hearing, Defendant testified that he and Mr. Hill discussed self-defense and the Defendant's theory of the case

prior to the trial, but Defendant believed that Mr. Hill did not spend adequate time discussing trial strategy and various options with Defendant. Defendant stated that he went into trial thinking he would likely testify and that Mr. Hill changed his strategy as the trial progressed. Defendant claimed that during the trial Mr. Hill informed him that he did not believe that the State's evidence refuted his self-defense claim. Defendant claimed that he decided not to testify based on Mr. Hill's professional opinion. Defendant admitted that Mr. Hill brought out helpful evidence of reasonable doubt at trial but testified it would have been better if the jury had heard from him. The Defendant argued at the Hearing that the jury should have heard his version of events and it was improper for the jury not to have heard from the only eye witness on the night in question, being the Defendant.

22. It is uncontroverted that the Defendant did not testify at trial. The Defendant claims that he was advised by his attorney, Brian Hill, not to testify and that he relied upon such professional advice in waiving his right to testify. Mr. Hill admitted at the Hearing that he advised the Defendant that he believed the risk of the Defendant testifying outweighed the benefit of the Defendant testifying at trial. However, Mr. Hill claims that while he did advise the Defendant not to testify, the ultimate decision not to testify was made by the Defendant.

*Id*.

After referencing the <u>Strickland</u> standard and the importance of a criminal defendant's right to testify, *id*. at paragraphs 23 through 25, the court found Burke "voluntarily agreed with Mr. Hill's advice not to testify at trial." *Id*. at ¶ 26. The court found that Burke's trial attorney, Mr. Hill, had "conducted an inquiry of Defendant regarding his right to testify, and his decision not to testify, at the trial," and Burke "stated under oath that they

had discussed his right to testify, that he had sat through a day and a half of testimony, and that Mr. Hill had given his opinion but it was Defendant's right to decide." *Id*. The court also found that Burke "stated at trial that he believed it was in his best interest not to testify based on discussions with his counsel and his counsel's advice." *Id*. The court thus concluded that Burke had voluntarily agreed with counsel not to testify. *Id*.

The court then addressed whether defense counsel's advice not to testify was deficient or improper. *Id*. at ¶ 27 through ¶ 28. The court made the following findings, concluding counsel was not ineffective:

> 29.   The Court finds, via the testimony of Mr. Hill at the Hearing, combined with a review of the trial transcript, that the advice of Mr. Hill to the defendant not to testify was a reasonable strategic consideration that should be given deference. There was other evidence presented at the trial which supported Defendant's theory of self-defense. The jury was able to consider that Mike Burke had threatened to kill the Defendant and that the Defendant was afraid of him. The jury heard that Mike Burke was in the possession and control of a gun at the time of the incident. The jury was able to consider that Mike Burke fired the first shot and that Mike Burke knew that the Defendant had a loaded gun in his vehicle prior to the encounter. The jury heard evidence that Mike Burke was dangerous when he was intoxicated and that on the night in question Mike Burke was indeed intoxicated. Testimony elicited that Mike Burke had previous encounters with the Defendant which involved a firearm and that Mike Burke had previously been in prison on weapons related charges. Thus, evidence and testimony was elicited from which a jury could have concluded that the Defendant acted in self-defense on the night at issue.
>
> 30.  Mr. Hill's concerns regarding placing the Defendant on

the stand were not unreasonable.  The State would have been able to easily impeach the Defendant at trial based on the admittedly inconsistent stories that he provided to the investigators.  Indeed, at the Hearing the Defendant was still "clearing up" discrepancies from previous statements that he had given to law enforcement as his version of the night in question continued to evolve.  It is reasonable to believe that such impeachment may have hindered the Defendant more than the ability to tell his version of the story may have benefitted the Defendant.  For the foregoing reasons, the Defendant's argument that Mr. Hill's counsel was ineffective based on Mr. Hill's recommendation not to testify at trial is denied.  *See* Lawrence v. State, 969 So. 2d 294, 309 (Fla. 2007) ("Strategic decisions do not constitute ineffective assistance if alternative courses of action have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct.").

Ex. 9.

On appeal, the First DCA affirmed without a written opinion. This adjudication on the merits is entitled to AEDPA deference under 28 U.S.C. § 2254(d), even though no reasoning is set forth in the decision.  *See* Richter, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."); Wright v. Sec'y, Dep't of Corr., 278 F.3d 1245, 1254-55 (11th Cir. 2002).  A review of the record supports the state courts' determination.  *See* Wilson v. Sellers, -- U.S. --, 138 S. Ct. 1188, 1192 (2018) ("We hold that the federal court should 'look through' the

unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.").

In particular, the state court record supports the findings of the post-conviction court that Burke voluntarily agreed with the advice of his attorney, Mr. Hill, not to testify in his defense at trial. During the trial, after the State rested its case, defense counsel stated on the record that Burke was not going to testify. Ex. 13 at 300. Burke was placed under oath and the following transpired:

> THE COURT: Do you wish to inquire on that point with Mr. Burke?
>
> MR. HILL: Yes, sir. Mr. Burke, you and I have had several different opportunities to discuss this case, and during those discussions we have talked about your right to testify in this case or not testify, is that correct?
>
> DEFENDANT: Yes.
>
> MR. HILL: You've been sitting here through the day and a half of testimony, and you've had the benefit of my counsel, and I've given you my belief and my opinion about whether you should testify in this case, is that correct?
>
> DEFENDANT: Yes, sir.
>
> MR. HILL: And I've also explained to you that that's just my opinion, you have the absolute right to testify, and you also have the absolute right not to testify, correct?
>
> DEFENDANT: Correct.

MR. HILL:  Based on my advice to you and your understanding of how this case has proceeded up to this point, is it your decision to not testify in this case?

DEFENDANT:  Yes.

MR. HILL:  Has anyone pressured you or threatened you into making that decision?

DEFENDANT:  No.

MR. HILL:  You believe that to be in your best interest?

DEFENDANT:  I do.

THE COURT:  For the record, sir, your full name?

DEFENDANT:  Steven Victor Burke.

THE COURT:  Mr. Burke, that's your decision based on discussions with Mr. Hill and his advice to you, is that correct?

DEFENDANT:  Yes, sir.

Ex. 13 at 300-01.  At the evidentiary hearing, Hill testified that he discussed with Burke the issue of Burke testifying, and "ultimately, I mean, I would give him advice, but ultimately it was his decision to make whether he chose to testify or exercise his right to remain silent."  Ex. 19 at 718.

The record also supports the court's conclusion that counsel's advice for Burke not to testify was not unreasonable, and constituted a strategic decision, given the circumstances of the case.  At the evidentiary hearing, Hill testified he advised Burke not to testify "based on my experience, that it

was not in his best interest to take the stand." Ex. 19 at 707. Hill explained

that his "strategy, with the self-defense argument in this trial, was based on

an evidentiary standpoint and not as much testimony, specifically, the fact

that the evidence was undisputed in this case, that the victim, Mike Burke,

fired his shotgun first" and so the defense argument was that when "the

defendant, fired his gun after Mike Burke fired his weapon or fired his

shotgun, that he did so in self-defense." *Id*. at 707-08. Hill further explained

that "one of the primary reasons that I opted to advise Mr. Burke not to testify

was that I knew that Mr. Basford [the prosecutor] was going to cross examine

him fiercely regarding the [inconsistent] statements, or the statement that he

made initially" when the defendant had indicated, among other things, he did

not even know what happened when his brother was killed. *Id*. at 708; *see*

*id*. at 669, 709-10. Mr. Hill testified, "I felt the best case was the case I

presented." *Id*. at 710. He also testified that if Burke did not testify, the jury

would not hear some things that would not be beneficial to the defense self-

defense theory:

> Q  And earlier you said you made the decision not to have the
> defendant testify. Was there some things that you were wanting
> to keep the jury from hearing about his testimony, specifically
> about him getting out of the car, knowing that his brother had the
> gun, and approaching him with his own gun, where [the
> prosecutor] could've argued that he was the aggressor by getting
> out of the car and opening the gate and walking that 40 plus fee
> up there?

A  I certainly did not believe that the testimony would assist him in this case, knowing the, I mean, basically confronting danger with a firearm or arming yourself and advancing toward, so no, that would, I mean, I don't think that's beneficial for him.

Q  You didn't think that fit the definition of a reasonably cautious and prudent person?

A  No, sir.  And that's what I had told him in our meetings, that when the issue was put before a jury, that it would not be what would an individual specific juror had done in his same shoes, but what would a reasonable person do under those circumstances.  And that was, I mean, that was the messages that I tried to convey to him, was that reasonable person standard.

*Id*. at 717-18.  Hill further testified:

Q  Was it your strategy to get out this, I'll call it bad reputation evidence of the victim, having a reputation for violence, about these prior bad acts, about shooting at the defendant and these threats about killing him, get all of that aggressive evidence out there toward the victim without having to expose him to testifying and cross examination?

A  Absolutely.

Q  And you kept from the jury, you specifically intended to keep from the jury the fact that the defendant, your client, saw his brother with a gun, standing outside, and then got out of the car to go up there and confront him with his own gun, that .410?

A  I did.

*Id*. at 719.  *See, e.g.*, Gregory v. State, 224 So. 3d 719, 731 (Fla. 2017) ("'[S]trategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's

decision was reasonable under the norms of professional conduct.'
<u>Occhicone v. State</u>, 768 So. 2d 1037, 1048 (Fla. 2000).")

Petitioner Burke has not shown that the state court's rejection of this
ground involved an unreasonable application of clearly established federal
law or that it was based on an unreasonable determination of the facts. *See*
28 U.S.C. § 2254(d)(1)-(2). This ground should be denied.

### <u>Ground 2</u>:  IAC – Motion Under "Stand Your Ground Law"

In his second ground, Petitioner Burke asserts his trial counsel
provided ineffective assistance by not filing "a pre-trial motion for immunity
under the Florida Stand Your Ground Law." ECF No. 1 at 17-18. Burke
exhausted this ground by raising it as the second claim in his Rule 3.850
motion. Ex. 8 at 21-28.

After an evidentiary hearing, the state post-conviction trial court denied
the claim. Ex. 9. In particular, regarding this claim, the court made the
following findings:

> 31. The Court is also not persuaded with Defendant's
> argument that Mr. Hill's [sic] was ineffective due to him failing to
> file a motion asserting the "Stand Your Ground Law." With
> respect to the "Stand Your Ground Law" argument, Mr. Hill
> testified that after researching the "Stand Your Ground Law," he
> believed that the defense was not a viable strategy because the
> evidence indicated that Defendant advanced toward the danger
> when he saw that Mike Burke had a gun. Thus, Mr. Hill opined
> that this the [sic] Defendant's viable option for purposes of trial
> was to focus on self-defense. The Defendant claimed that Mr.

Hill did not talk to him about requesting immunity via the "Stand Your Ground Law" and never fully discussed the defense with the Defendant.

32.  Based on the testimony and evidence presented at the Hearing, in conjunction with the review of the trial transcripts, this Court cannot find that the Defendant was prejudiced by Mr. Hill's failure to file such "Stand Your Ground Law" defense.  Based on the Court's review of the case, it does not appear likely that such a defense would have been granted had it been filed by Mr. Hill on the Defendant's behalf.   While there is evidence that the Defendant was acting in defense of himself, there is also competent substantial evidence that the Defendant was not acting in self-defense or in defense of a forcible felony at the time of the shooting.  *See* Mederos v. State, 102 So. 3d 7, 10 (Fla. 1st DCA 2012).  Even if Mr. Hill was incorrect regarding his analysis of the applicability of the "Stand Your Ground Law" defense to this case, this Court cannot find that the result of the proceeding would have been different.  *See* Porter v. McCullum, 558 U.S. 30, 40 (2009) (citing Strickland, a defendant is prejudiced by counsel's deficient conduct only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").   Thus, the Defendant fails to show any prejudice in Mr. Hill not filing a motion for "Stand Your Ground Law" immunity and his claim for ineffective assistance of counsel is due to be denied.

*Id*.

On appeal, the First DCA affirmed the post-conviction court's order without an opinion, an adjudication on the merits entitled to deference under 28 U.S.C. § 2254(d).  Ex. 23; *see* Richter, 562 U.S. at 99.  The record supports the state courts' determination.  *See* Wilson, 138 S. Ct. at 1192.

In particular, at the evidentiary hearing, Mr. Hill testified he had considered "Stand Your Ground" but decided the better course, given the

facts of the case, focused on self-defense:

> Q  . . . Now, is there, is there any reason that you did not, based upon those facts, file a stand your ground motion to make him immune from prosecution?
>
> A   My decision in this case was to defend Mr. Burke, and I explained this decision to him, was to argue self-defense.  Now, stand your ground, in my opinion, stand your ground did not apply because of the nature of how Mr. Burke, the way he responded to, or his actions did not lead me to believe that this was an appropriate stand your ground.  However, I did believe it was self-defense, but not stand your ground.

Ex. 19 at 701-02.  Mr. Hill explained:

> Because the issue that I, the issue that I kept, that caused me the most concern and what I had explained to Mr. Burke, the issue that caused me the concern about stand your ground was <u>when he got to the house and he realized that his brother was in the yard with a shotgun, he got, was out of his car, he got back into his car, got his gun and walked up to meet his brother there on the sidewalk where this altercation ultimately ensued</u>. . . . That set of facts, I did not believe that a judge would find stand your ground applicable.

*Id*. at 703 (emphasis added).  Mr. Hill further explained that although Burke may have "had no duty to retreat [because he had an ownership interest in the home with his brother and two sisters, though his brother resided there], but he didn't retreat, he advanced forward."  *Id*. at 704.  Indeed, as explained in the post-conviction court's history of the case, *supra*, Burke had left the property on his brother's instruction to leave and then returned, resulting in the deadly confrontation.  On cross, Mr. Hill confirmed that he considered

"stand your ground," but believed, based on the facts and evidence in the case, the judge would deny it, so he "chose to present the case the other way." *Id*. at 720; *see* § 776.032, Fla. Stat. (2014).

Had counsel filed such a motion, the trial court would have conducted a pre-trial hearing to determine whether Burke was entitled to "Stand Your Ground" immunity pursuant to section 776.032, Florida Statutes (2014). *See, e.g.*, Peterson v. State, 983 So. 2d 27 (Fla. 1st DCA 2008) (explaining "Stand Your Ground" law, enacted in 2005, "provides that a person who uses force as permitted in section 776.013 is justified in using such force and is immune from criminal prosecution as well as civil action for the use of such force"). "[W]hen immunity under this law is properly raised by a defendant, the trial court must decide the matter by confronting and weighing only factual disputes." *Id*. at 29. Under the law applicable at the time, "when such a claim is raised, the trial court must determine whether the defendant has shown by a preponderance of the evidence that the immunity attaches." *Id*.; *see* Bretherick v. State, 170 So. 3d 766, 775 (Fla. 2015) (holding that "the defendant bears the burden of proof, by a preponderance of the evidence, to demonstrate entitlement to Stand Your Ground immunity at the pretrial evidentiary hearing"), *superseded by statute as stated in* Sparks v. State, 299 So. 3d 1 (Fla. 4th DCA 2020); Nieves v. Sec'y, Dep't of Corr., 853 F.

App'x 368, 373 (11th Cir. 2021) ("At the time of Nieves's trial in 2013, when a defendant raised a question of immunity from criminal prosecution under Florida's stand-your-ground law, the defendant bore the burden of providing at a pretrial evidentiary hearing entitlement to immunity under the statute by a preponderance of the evidence.").  *See also* Boston v. State, 326 So. 3d 673, (Fla. 2021) (explaining, "In light of the 2017 amendment [to the Stand Your Ground Law], a defendant is no longer required to prove that he or she acted in self-defense by a preponderance of the evidence at an immunity hearing; instead, a defendant need only make a prima facie showing at that point.  To defeat the claim of immunity, the State must prove by clear and convincing evidence that the defendant did not act in self-defense.").

If counsel had sought a "Stand Your Ground" immunity hearing, an issue would have been made regarding the inconsistent statements Burke provided to law enforcement.  As the post-conviction court found, even at the Rule 3.850 evidentiary hearing, Burke "was still 'clearing up' discrepancies from previous statements that he had given to law enforcement as his version of the night in question continued to evolve."  Ex. 9 at ¶ 30; *see* Ex. 19 at 660-68 (Burke's testimony on direct at evidentiary hearing), 668-91 (Burke's testimony on cross at evidentiary hearing).  *See, e.g.*, McCoy v. Inch, No. 5:20cv283-TKW/EMT, 2021 WL 4507481, at *7 (Aug. 2, 2021)

(Report and Recommendation to deny claim of IAC for decision not to file "Stand Your Ground" motion where, among other things, trial counsel testified her decision "was made for strategic purpose of avoiding having to address at trial a sixth statement by the Defendant (his testimony at a pretrial hearing for immunity)" and counsel "was of the opinion that testifying at a pretrial hearing would be very detrimental to the Defendant in light of her opinion that the motion would not be successful"); Jackson v. Fla. Dep't of Corr. Sec'y, No. 5:16cv301-LC/CJK, 2018 WL 3433300, at *9 (June 12, 2018) (Report and Recommendation to deny claim of IAC for decision not to file "Stand Your Ground" motion and explaining, among other things, "the state court reasonable concluded that counsel's failure to file the motion to dismiss petitioner now proposes was a strategic decision made after thorough investigation of the facts and careful, reasonable consideration of the advantages and disadvantages of moving to dismiss the charge on Stand Your Ground Immunity" and "[a]lthough petitioner appears to believe he had nothing to lose from pursuing a motion to dismiss, he did have something to lose" as "[t]he motion had very little chance of success and created an additional source of impeachment evidence").

Given the testimony of Mr. Hill at the evidentiary hearing, the record supports the state court's determination that defense counsel considered

whether to file a pretrial motion for "Stand Your Ground" immunity.  Counsel's decision not to file the motion constitutes a reasonable strategy based on the evidence and circumstances of the case.  *See, e.g.*, <u>Boyington v. Sec'y, Fla. Dep't of Corr.</u>, No. 3:18cv810-BJD/MCR, 2021 WL 719644, at *5 (M.D. Fla. Feb. 24, 2021) (order denying § 2254 petition that included IAC claim based on decision not to file "Stand Your Ground" immunity motion and explaining as to that claim, among other things, "[a] decision to not lodge a stand-your-ground challenge pre-trial is 'the kind of reasonable strategic decision that cannot be attacked through a collateral claim of ineffectiveness'" (quoting <u>Edwards v. Att'y Gen., State of Ala.</u>, No. 19-13739-G, 2020 WL 1540405, at *3 (11th Cir. 2020)).

Moreover, as the state post-conviction court concluded, even if counsel's decision somehow constituted deficient performance, Burke has not shown the result of the proceeding would have been different.  Ex. 9 at ¶ 32.  The state court found that it was not "likely that such a defense would have been granted."  *Id.*; *see, e.g.*, <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."); <u>Pinkney v. Sec'y, Dep't of Corr.</u>, 876 F.3d 1290, 1295 (11th Cir. 2017) ("[A]lthough 'the issue of ineffective assistance – even when based on the failure of counsel to raise

a state law claim – is one of constitutional dimension,' [a federal court] 'must defer to the state's construction of its own law' when the validity of the claim that . . . counsel failed to raise turns on state law.").  The state post-conviction court thus properly concluded Burke had not shown prejudice.  *See, e.g.*, Mederos v. State, 102 So. 3d 7, 11 (Fla. 1st DCA 2012) (denying petition for writ of probation challenging trial court's denial of Stand Your Ground motion to dismiss:  "[T]he testimony below 'contradicts wildly.'  While there was testimony supporting petitioner's argument that he was acting in defense of Ribas and himself and that he was defending against a forcible felony, there was also competent, substantial evidence that he was not acting in self-defense or in defense of a forcible felony at the time of the stabbing."); Nieves, 853 F. App'x at 375 ("[I]n light of the limited and ambiguous evidence concerning self-defense in this case, the state court's determination – that Nieves could not have met his burden of establishing immunity under the statute, and, therefore, his counsel was not ineffective for failing to pursue an evidentiary hearing on the stand-your-ground motion – was not contrary to, or an unreasonable application of Strickland," nor "was it based on an unreasonable determination of the facts.").

Petitioner Burke has not shown that the state court's rejection of this ground involved an unreasonable application of clearly established federal

law or that it was based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(1)-(2).  Accordingly, this ground should be denied.

## Conclusion

Petitioner Burke is not entitled to federal habeas relief.  It is respectfully **RECOMMENDED** that the § 2254 petition, ECF No. 1, be **DENIED**.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted).  Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument as to whether

a certificate should issue by filing objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied. *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1). It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**. The Clerk of Court shall substitute Ricky D. Dixon for Mark Inch as Respondent.

**IN CHAMBERS** at Tallahassee, Florida, on December 17, 2021.

**S/  Martin A. Fitzpatrick**
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed.**

R. Civ. P. 72(b)(2). **<u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>**. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.